UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
BRYANT JACKSON,                                  :

                Petitioner,            :

          -against-                      :        **REPORT AND RECOMMENDATION**

M. BRANDT,                                            :        10 Civ. 05858 (PAC)(KNF)

                Respondent.        :
------------------------------------------------------X
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

TO THE HONORABLE PAUL A. CROTTY, UNITED STATES DISTRICT JUDGE

## INTRODUCTION

On July 18, 2010, acting pro se, Bryant Jackson ("Jackson") filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, alleging his constitutional rights were violated when: (1) he was "denied due process based upon the unduly suggestive line up procedures," "no independent source hearing was held," and the hearing court refused to allow defense counsel to refresh a detective's recollection of the victim's description of the robber's clothing; (2) "the grand jury proceeding were [sic] rendered defective where numerous unrelated offenses were improperly joined"; and (3) he was "denied his 6th Amendment jury trial rights, when the court imposed a recidivist sentence."  Jackson's motion to withdraw from the petition his unexhausted Sixth Amendment claim, in connection with his adjudication and sentence as a persistent-violent-felony offender, was granted.  The respondent opposes the petition.

## BACKGROUND

On January 19, 2006, around 9:45 p.m., Katherine McCaskey ("McCaskey") was walking home from Stuyvesant Park, in Manhattan, while talking on her cellular telephone to a

1

friend, in California.  She noticed Jackson approach her, heading north on the same block.  Suddenly, Jackson grabbed her and the strap of her purse and with his right hand holding a gun to her chest said: "Shut up bitch, or I'll shoot you."  Jackson motioned with a gun toward McCaskey's purse.  She screamed that she had no money, removed her wallet from her purse and told Jackson to take it.  Jackson ordered McCaskey to open the wallet and he took the two dollars that were there.  Jackson grabbed McCaskey's cellular telephone from her hand and put it in his pants.  He told her the following: "Turn around and walk away or I'll shoot you in the head."  McCaskey turned around and walked away.

   The encounter between Jackson and McCaskey, during which McCaskey stood face-to-face with and approximately one foot away from Jackson, lasted about two minutes.  Nothing obstructed her view of Jackson, and the area where they stood was relatively well-lit, with two light posts approximately ten feet from them.  McCaskey observed that Jackson was a black man, who appeared to be in his late thirties, had a medium to slender build and was about one foot taller than McCaskey, who is 5'5" tall.  Jackson was wearing a black knit hat, a brown cable knit sweater and a brown leather jacket.  Since she spent most of the time during the encounter looking at Jackson's face, McCaskey observed that he had a "tall cheekbone structure, kind of a gaunt cheek area, tall bridge to his nose . . . the beginnings of a beard, and some . . . dirt or something on his face."

   McCaskey returned to her apartment two to three minutes after the robbery.  While she was at home, she received an e-mail message from the friend in California with whom she had been talking on the telephone at the time of the attack.  The friend had called 911 and asked the police to check on McCaskey.  Minutes later, two police officers arrived at McCaskey's apartment and took her to a police precinct.  Sergeant Matteo Brattesani ("Brattesani")

2

interviewed McCaskey at the police precinct, at about 11:30 p.m. She described the robber to Brattesani as a very tall, black man in his thirties, about "six-three, six-four," slim build, who was wearing a black knit hat, a brown sweater with some sort of knitting on the front.

After Brattesani received the robber's description, he realized that it matched a person that he had seen recently because that person was also very tall, 6'4". Brattesani had a copy of that person's photograph, which described the person's height, weight, approximate age, race and gender. Using these characteristics, Brattesani employed a police computer to identify five men who matched the robber's description in order to use their arrest photographs in a photographic array. Brattesani showed McCaskey a photographic array with six photographs. After viewing the photographs for less than ten seconds, she selected the photograph designated "number 1," and became very emotional. She wrote underneath the photographic array that she recognized the person depicted in photograph number one as the man who robbed her on January 19, 2006. The person depicted in photograph number one was Jackson.

Brattesani issued a wanted card with Jackson's photograph. It stated that the police were looking for Jackson in connection with a gun-point robbery, and listed his birth date, NYSID number and prior arrests. Based on that card, the police issued a wanted poster and circulated it among officers in many police precincts. On February 1, 2006, uniformed police officers recognized Jackson from the wanted poster and arrested him at approximately 2:00 a.m.

Later that day, Brattesani and another detective transported McCaskey to the 13th police precinct to participate in a lineup identification proceeding. Brattesani selected five persons, in addition to Jackson, for the lineup, based on: height; weight; general age; race; and gender. To minimize discrepancy in the height of the five persons he selected as fillers for the lineup, who, apart from Jackson, were 5'6", 5'10", 5'11", 6'1" and 6'2" tall, Brattesani directed that all the

lineup participants be seated when McCaskey viewed them. Jackson held number one against his chest and McCaskey identified the person holding number one as the person who robbed her on January 19, 2006.

A grand jury charged Jackson with one count of first-degree robbery and twenty-seven other offenses relating to his possession of crack cocaine, imitation drugs and forged instruments, as well as his sale of imitation drugs. Jackson made a motion to dismiss the indictment on the ground that the counts in the indictment were joined improperly. The court severed the first-degree robbery charge and denied his motion. Jackson also made a motion to suppress McCaskey's identification testimony. A suppression hearing was held at which Brattesani testified, in pertinent part, as follows:

> Q.            Is it fair to say that the complainant described the perpetrator as wearing a brown leather jacket at the time of the crime?
> THE COURT:    Brown leather jacket, did she say?
> THE WITNESS:  No, not at all.
> Q.            Well, do you remember what she said about what kind of jacket the perpetrator was wearing?
> A.            She described the sweater to me, a brown sweater with some sort of knitting in the front.
> MS. CONWAY:   Can I show the witness a copy of the complaint report that was filled out in connection with the robbery?
> THE COURT:    What has that got to do with the hearing?
>                       * * *
> MS. CONWAY:   Well, I had asked the sergeant if he recalled that the complainant had described the perpetrator as wearing a brown leather jacket.
> THE COURT:    Do you recall her - - Do you recall, as you sit here today, her telling you that the person who robbed her was wearing a brown leather jacket?
> THE WITNESS:  Your Honor, I don't recall that.
> THE COURT:    Okay, the answer's no.

The hearing court found that the lineup identification was not unduly suggestive, and that the brown leather jacket worn by Jackson at the lineup was not so distinctive or unique as to affect the fairness of the lineup. The court denied Jackson's suppression motion and he proceeded to a jury trial. At trial, Jackson's sister testified that Jackson was with her on January 19, 2006, until 9:15 p.m. The jury found Jackson guilty of first-degree robbery. He was adjudicated a persistent-violent-felony offender and sentenced to twenty years to life imprisonment.

On direct appeal, Jackson argued that: (i) he was denied due process, when the court (a) refused to suppress the unduly suggestive lineup identification held twelve days after the crime, where the prominent features of the perpetrator were that he was 6'4" tall and wore a brown jacket and he was the tallest person in the lineup, even when slouching, and the only one wearing brown clothing, and no independent source hearing was held, and (b) refused to permit defense counsel, on cross-examination, to refresh the recollection of the detective, who interviewed the sole eyewitness, with the complaint report showing that she stated the perpetrator was wearing a brown leather jacket; and (ii) the grand jury proceeding was impaired, where the robbery was based on an identification by a single eyewitness and the defense presented an alibi witness for the grand jury's consideration. The New York State Supreme Court, Appellate Division, First Department, determined that: (1) the hearing court denied properly Jackson's suppression motion because the evidence educed at that hearing established that the lineup identification procedure was not unduly suggestive; (2) the hearing court precluded Jackson properly from using a complaint report prepared by an officer who did not testify to refresh the recollection of one who did testify, because the testifying officer's recollection was clear and did not need refreshing; and (3) the remaining arguments made by Jackson have no merit. See People v. Jackson, 61 A.D.3d 620, 620-21, 877 N.Y.S.2d 327, 328-29 (App. Div. 1st Dep't 2009). On

5

August 19, 2009, the New York Court of Appeals denied Jackson's request for leave to appeal. See People v. Jackson, 13 N.Y.3d 745, 886 N.Y.S.2d 99 (2009). This petition followed.

Jackson contends he was denied due process when he was placed in a lineup twelve days after the crime, the prominent features of the perpetrator matched his own "on all four squares," and no independent source hearing was held. Moreover, he was further denied due process because the hearing court refused to allow defense counsel to refresh Brattesani's recollection of the victim's identification by showing him the complaint report indicating that, on the night of the crime, the victim informed the police that the perpetrator was wearing a brown leather jacket. Since Jackson was the only person in the lineup who was 6'4" and wearing a brown outer garment, the lineup was unduly suggestive. In addition, according to Jackson, the court should have conducted a hearing at which the prosecutor would have to show that an independent source for any in-court identification of him, by the victim, exists.

Jackson also contends that the grand jury proceeding was defective because he was indicted for a single count of first-degree robbery, based on the testimony of the sole eyewitness, and no evidence existed that the robbery was motivated by drugs. However, the grand jury heard evidence of Jackson's alleged possession and sale of genuine and imitation drugs and of his possession of forged instruments. Consequently, the grand jury charged Jackson with twenty-eight counts, including one count of first-degree robbery, twenty-two counts of second-degree criminal possession of a forged instrument, and the five counts pertaining to drug possession and sale. According to Jackson, these counts pertained not only to his arrest for robbery but also an additional arrest on January 5, 2006. Jackson contends that the court severed his first-degree robbery charge because it recognized that the other charges were joined improperly, but erred in refusing to dismiss the indictment because a clear possibility exists that the presentation of

evidence concerning the drug and forged instrument charges prejudiced the grand jury's evaluation of the robbery case.

The respondent contends that the state court's findings of fact in connection with the lineup procedure are entitled to deference and the Appellate Division's decision that the lineup was not unduly suggestive is neither contrary to nor an unreasonable application of clearly established federal law.  Moreover, even if the lineup identification procedure was unduly suggestive, McCaskey had an independent basis upon which to make her in-court identification of Jackson as the robber: her observation of him, at close range, during the robbery.

The respondent also contends that Jackson's challenge to the state court's refusal to permit his attorney to refresh Brattesani's recollection is not cognizable on habeas corpus review because it is a matter of state evidentiary law, and it was a proper ruling under the state law. Furthermore, Jackson's claim, that the grand jury indictment was defective, because it joined unrelated crimes to the robbery charge improperly, does not present a federal constitutional question because no federal constitutional right to a grand jury in a criminal prosecution exists.

## DISCUSSION

*Legal Standard*

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim — (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state-court decision is contrary to clearly established Supreme Court precedent if its conclusion on a question of law is "opposite to that reached by [the Supreme] Court," or if the state court reaches a conclusion different from that of the Supreme Court "on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13, 120 S. Ct. 1495, 1523 (2000). A state-court decision involves an unreasonable application of clearly established federal law if "the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," or "if the state court either unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id. at 407, 120 S. Ct. at 1520. On a petition for a writ of federal habeas corpus, "[t]he petitioner carries the burden of proof." Cullen v. Pinholster, __ U.S. __, 131 S. Ct. 1388, 1398 (2011). "A state court's determination of a factual issue is presumed to be correct, and may only be rebutted by clear and convincing evidence." Bierenbaum v. Graham, 607 F.3d 36, 48 (2d Cir. 2010) (citing 28 U.S.C. § 2254(e)(1)). "It is well established that a federal habeas court does not sit to correct a misapplication of state law, unless such misapplication violates the Constitution, laws, or treaties of the United States." Ponnapula v. Spitzer, 297 F.3d 172, 182 (2d Cir. 2002).

***Application of Legal Standard***

<ins>Unduly Suggestive Lineup</ins>

"When the prosecution offers testimony from an eyewitness to identify the defendant as a perpetrator of the offense, fundamental fairness requires that that identification testimony be reliable." Raheem v. Kelly, 257 F.3d 122, 133 (2d Cir. 2001). When a defendant objects to the identification testimony, the court must determine whether evidence of the prior identification or

the in-court identification is admissible. See id. "[T]he identification evidence will be admissible if (a) the procedures were not suggestive or (b) the identification has independent reliability." Id. Lineups may be unduly suggestive where "suspects are the only participants wearing distinctive clothing or otherwise matching important elements of the description provided by the victim." Id. at 134.

The state-court's finding, that a brown outer garment worn by Jackson at the lineup identification is an "unremarkable," "common article of clothing [that] was not so distinctive," Jackson, 61 A.D.3d at 620, 877 N.Y.S.2d at 328, is presumed to be correct and Jackson presented no clear and convincing evidence to rebut this presumption. Whether a lineup is unduly suggestive is a fact-specific determination, and the state-court's conclusion, that this common article of clothing did not unduly influence the identification, especially in light of "the passage of nearly two weeks between the crime and the lineup," which "would have reduced the significance of any similarity between an unremarkable garment worn by a lineup participant and one worn by the described suspect," id., was neither contrary to nor involved an unreasonable application of clearly established federal law. Unlike in Raheem, where the court found the lineup procedure suggestive because: (i) the defendant was the only lineup participant wearing a black leather coat; and (ii) the most prominent feature mentioned by the identification witnesses in their description of the perpetrator and the outstanding feature of the perpetrator's appearance in the minds of the witnesses was the black leather coat worn by the perpetrator, 257 F.3d at 137, here, the brown jacket was not the most prominent feature in McCaskey's description of the robber, or the outstanding feature of his appearance in her mind, or a critical factor in her determination to select Jackson from the lineup. McCaskey gave a comprehensive description of the robber, based on her face-to-face, unobstructed view of the robber, at a

9

distance of about one foot from him, during a period of about two minutes, and the record is devoid of evidence establishing that the robber's brown jacket or sweater stood out to McCaskey in any way or was the outstanding feature of the robber's appearance in her mind.

"[T]here is no requirement that even in line-ups the accused must be surrounded by persons nearly identical in appearance, however desirable that may be." United States v. Reid, 517 F.2d 953, 966 n.15 (2d Cir. 1975).  Although height was a prominent feature of McCaskey's description of the robber, the state court found that, "[b]ecause all of the lineup participants were seated, height differences were sufficiently minimized." Jackson, 61 A.D.3d at 620, 877 N.Y.S.2d at 328.  This state-court's determination was not contrary to or an unreasonable application of clearly established federal law.  Given that the state court determined that the lineup identification procedure was not suggestive, no need existed for the state court to conduct any further inquiry.  See Raheem, 257 F.3d at 133 ("If the procedures were not suggestive, the identification evidence presents no due process obstacle to admissibility.").  Accordingly, Jackson failed to establish that the state-court decision, concerning his claim of an unduly suggestive lineup, was contrary to or involved an unreasonable application of clearly established federal law.

### Refusal to Permit Defense Counsel to Refresh Brattesani's Recollection

"The right to a fair trial [is] guaranteed to state criminal defendants by the Due Process of the Fourteenth Amendment." Cone v. Bell, 556 U.S. 449, __, 129 S. Ct. 1769, 1772 (2009). "The Constitution guarantees a fair trial through the Due Process Clauses, but it defines the basic elements of a fair trial largely through . . . several provisions of the Sixth Amendment." Strickland v. Washington, 466 U.S. 668, 684-85, 104 S. Ct. 2052, 2063 (1984).  The Sixth Amendment  right "to confront and cross-examine witnesses . . . [has] long been recognized as

essential to due process." Chambers v. Mississippi, 410 U.S. 284, 294, 93 S. Ct. 1038, 1045 (1973).

Jackson's argument, that the state court erred when it precluded his counsel's use of the complaint report to refresh Brattesani's recollection because Brattesani did not write it, was rejected by the state court based on its factual findings that "the officer's recollection was clear and did not need to be refreshed," and Jackson failed to present clear and convincing evidence to rebut the state-court's factual findings. Moreover, the state court determined that no prejudice attended "because the court, as trier of fact, was made aware of the contents of the report, and because the difference between the clothing descriptions in the report and the officer's testimony was insignificant with regard to the issue of suggestiveness." Jackson, 61 A.D.3d at 621, 877 N.Y.S.2d at 328-29. Jackson did not demonstrate that the state-court's decision was contrary to or an unreasonable application of clearly established federal law.

<u>Defective Grand Jury Proceeding</u>

Claims of deficiency in state grand jury proceedings are not cognizable in federal habeas corpus proceedings because a jury conviction renders harmless, beyond a reasonable doubt, any defect in the state grand jury proceedings concerning the charging decision. See Lopez v. Riley, 865 F.2d 30, 32 (2d Cir. 1989). Accordingly, Jackson's claim, that the state court erred when it denied his motion to dismiss the first-degree robbery indictment based on improper joinder, is not cognizable in this action because the jury found Jackson guilty of first-degree robbery.

**RECOMMENDATION**

For the foregoing reasons, I recommend that the petition be denied.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Paul A. Crotty, 500 Pearl Street, Room 735, New York, New York, 10007, and to the chambers of the undersigned, 40 Centre Street, Room 540, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Crotty. ***Failure to file objections within fourteen (14) days will result in a waiver of objections and will preclude appellate review.*** See Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985); Cephas v. Nash, 328 F.3d 98, 107 (2d Cir. 2003).

Dated: New York, New York
February 23, 2012

Respectfully submitted,

*Kevin Nathaniel Fox*
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

Copies mailed to:

Bryant Jackson
Priscilla Steward, Esq.

12